# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COOLTVNETWORK.COM, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 19-291-LPS-JLH |
| BLACKBOARD INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| COOLTVNETWORK.COM, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 19-292-LPS-JLH |
| FACEBOOK, INC., | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| COOLTVNETWORK.COM, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 19-293-LPS-JLH |
| INTERNATIONAL BUSINESS MACHINES CORP., | : | |
| Defendant. | : | |

| | |
|---|---|
| COOLTVNETWORK.COM, INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. 19-294-LPS-JLH |
| KALTURA, INC., | : |
| Defendant. | : |

| | |
|---|---|
| COOLTVNETWORK.COM, INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. 19-295-LPS-JLH |
| LIMELIGHT NETWORKS, INC., | : |
| Defendant. | : |

| | |
|---|---|
| COOLTVNETWORK.COM, INC., | : |
| Plaintiff, | : |
| v. | : C.A. No. 19-296-LPS-JLH |
| MICROSOFT CORP., | : |
| Defendant. | : |

| COOLTVNETWORK.COM, INC., | : |  |
|---|---|---|
| Plaintiff, | : |  |
| v. | : | C.A. No. 19-297-LPS-JLH |
| OOYALA, INC., | : |  |
| Defendant. | : |  |

| COOLTVNETWORK.COM, INC., | : |  |
|---|---|---|
| Plaintiff, | : |  |
| v. | : | C.A. No. 19-534-LPS-JLH |
| SNAP INC., | : |  |
| Defendant. | : |  |

| COOLTVNETWORK.COM, INC., | : |  |
|---|---|---|
| Plaintiff, | : |  |
| v. | : | C.A. No. 19-535-LPS-JLH |
| TRAPELO CORP., | : |  |
| Defendant. | : |  |

# **MEMORANDUM ORDER**

WHEREAS, Magistrate Judge Hall issued a 27-page Report and Recommendation ("Report") (D.I. 64)[1] on November 6, 2020, recommending that the Court adopt certain claim constructions for disputed terms in U.S. Patent No. 7,162,696 (the "'696 patent");

---

[1] All references to the docket index (D.I.) are to the *Blackboard* action, C.A. No. 19-291.

WHEREAS, on November 9, 2020, Plaintiff CoolTVNetwork.com, Inc. ("CoolTV" or "Plaintiff") objected to the Report ("Objections") (D.I. 65), asserting that it incorrectly found the two means-plus-function limitations were indefinite and incorrectly construed the terms "bid mode," "interact mode," "wherein the mode control comprises[2] a plurality of modes," and "hot spot" / "multifunctional hot spot;"

WHEREAS, on November 23, 2020, Defendants responded to the Objections ("Response") (D.I. 70);

WHEREAS, the Court has considered the parties' objections and responses *de novo*, *see St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691 F. Supp. 2d 538, 541-42 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3);

**NOW THEREFORE, IT IS HEREBY ORDERED** that CoolTV's Objections (D.I. 65) to Judge Hall's recommendations of indefiniteness and constructions of "bid mode," "interact mode," "wherein the mode control comprises a plurality of modes," and "hot spot" / "multifunctional hot spot" are **OVERRULED** and the constructions set forth in the Report are **ADOPTED**.

1. As an initial matter, Plaintiff has not shown good cause for raising new arguments in its Objections that it did not present to the Magistrate Judge. (*See* Standing Order for Objs. Filed under Fed. R. Civ. P. 72 ¶ 5; *see also Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 377 (D. Del. 2014) (explaining that new arguments are generally not permitted in objections to Magistrate Judge's report and recommendation)) Nor has Plaintiff shown any error

---

[2] The record includes uses of the transitional word "contains" (*see, e.g.*, Report at 24), as well as "comprises" (*see, e.g.*, Tr. at 70). The claim term uses "comprises." '696 patent at 9:51. No party appears to attach any significance to the distinction between "contains" and "comprises" for purposes of the disputes being addressed here.

2

or abuse of discretion in Judge Hall's determination that new arguments made for the first time at the claim construction hearing were untimely and waived. (*See, e.g.*, Report at 16-17) (explaining, for example, that Plaintiff's position on which portions of patent provide corresponding structure for means-plus-function limitations has changed several times) Regardless of whether another Judge might have permitted untimely new arguments, there is no manifest injustice or any other unwarranted unfairness in enforcing Judge Hall's waiver decision. (*See generally* D.I. 70 at 3) ("The only potential injustice here would arise if Plaintiff were allowed to raise new arguments after months of briefing and even after receipt of Judge Hall's R&R, reflecting a continued attempt to expend judicial and party resources in furtherance of meritless positions.")

2. Plaintiff objects to Judge Hall's recommendation that the two means-plus-function limitations are indefinite, arguing that the specification adequately discloses an algorithm corresponding to the claimed functions. (*See* Report at 10) (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (holding that in cases involving means-plus-function claims where structure is "a computer, or microprocessor, programmed to carry out an algorithm," specification must disclose corresponding algorithm to be sufficiently definite)) The Court agrees with the Report that the specification fails to adequately disclose an algorithm corresponding to the claimed functions, so the two means-plus-function limitations are indefinite. *See Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311-12 (Fed. Cir. 2012); *Aristocrat Techs.*, 521 F.3d at 1333.

3. With respect to "means for performing at least one of a plurality of predetermined functions executed with the selection of each particular hot spot," the Report notes that Plaintiff cited large swaths of the patent as its proposed corresponding structure, including roughly 50%

3

of the patent's text and eight of its nine figures. (*See* Report at 11-13) The Report correctly concluded that nothing in the specification or figures discloses an algorithm for ***how*** to perform the function. (*See id.* at 12-13) (citing Plaintiff's use of functional language such as "activate" and failure to provide corresponding algorithm explaining how to achieve activation function) The new specification citations raised by Plaintiff for the first time in its Objections (*see* D.I. 65 at 3) do not change this conclusion, for reasons identified by Defendants (*see* D.I. 70 at 4-6).

4. As to the second means-plus-function limitation, "means, defined by said instructions, for selecting and activating at least one of said predetermined functions by clicking on each particular Multifunctional Hot Spot," the specification similarly fails to disclose an algorithm corresponding to the claimed functions of "selecting" and "activating." As the Report noted, Plaintiff cited as supporting structure the same large swath of the patent as for the "means for performing" limitation, plus a few more lines of text, but "never explain[ed] which of those portions describe the means for performing and which describe the means for selecting and activating." (Report at 16)

5. CoolTV also objects to the recommended construction of "bid mode" as meaning "mode that allows the user to click a multifunctional hot spot to place a bid in an auction for products among multiple users in a multicast communication interface." (D.I. 65 at 6-7) The parties' dispute centers on whether bid mode requires an auction or a bid, which CoolTV contends it does not. Defendants assert, and Plaintiff does not dispute, that "bid mode" has no plain, ordinary, or customary meaning to a person of ordinary skill in the art ("POSA"). (*See* Report at 22) The Report rejected CoolTV's view, reasoning that all references to bid mode in the specification require functionality that allows a user to place bids in an auction. (*Id.*) (citing *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357 (Fed. Cir. 2016)) CoolTV argues that bid

4

mode permits – but does not require – the user to place a bid in an auction, citing bid mode's additional functionality. (D.I. 65 at 7) But CoolTV confuses the requirement here. The relevant question is not whether bid mode requires the user to place a bid in an auction, but whether bid mode requires *functionality* that allows a user to do so. CoolTV does not dispute the latter. (*See* Oct. 19, 2020 Hearing Transcript ("Tr.") at 90-91) (conceding bid mode requires auction or bid) The Court, thus, agrees with the Report.

6. Plaintiff objects to the recommended construction of "interact mode" as meaning "mode that facilitates interaction between the user and live-streamed internet programs" because interact mode includes other features in addition to the feature enabling interaction between the user and live-streamed internet programs. (D.I. 65 at 8) Defendants assert, and Plaintiff does not dispute, that "interact mode" has no plain, ordinary, or customary meaning to a POSA. (*See* Report at 22) The Report noted that every mention of interact mode in the specification teaches that the mode "facilitates interaction between the user and live-streamed internet programs." (*Id.* at 23) The Court agrees with Defendants that the additional features cited by Plaintiff are, indeed, *additional* to rather than *alternative* to the core feature of enabling interaction between the user and live-streamed internet programs. (*See* D.I. 70 at 8-9) Thus, the Court agrees with the Report that, consistent with *Indacon*, "interact mode" should not be construed more broadly (as CoolTV proposes) to encompass "communication between users and/or moderators." (*See* Report at 22-23)

7. CoolTV objects to the recommended construction of "wherein the mode control comprises a plurality of modes" as meaning "wherein the mode control comprises a plurality of modes that the user can switch between." (D.I. 65 at 8-10) The parties dispute whether the end user must have the ability to "switch" between the modes, which requires ending one mode to

5

start another. CoolTV argues for adoption of the word "select," rather than "switch," which would allow multiple modes to be active at the same time. (*See id.* at 9) The Report explains, however, that the specification and accompanying figures repeatedly describe the user "switching" between modes. (*See, e.g.*, Report at 25 ("Has the user switched Modes?") (citing '696 patent, Fig. 1B at 115, 118); *id.* (noting that "the software 100 monitors whether the user has switched modes") (citing '696 patent at 7:5-6)) Defendants also note that "the specification does not describe more than one mode being active at the same time," suggesting that a construction using the word "select" would result in claim scope broader than what is truly claimed. (*See id.*) Finally, even if multiple modes could be active simultaneously, CoolTV fails to connect this to how the user *interacts* with these modes. In the end, the Court agrees with the Report that a POSA would understand the term consistent with Defendants' proposed construction.

8. Finally, CoolTV objects to the recommended construction of "hot spot" / "multifunctional hot spot" as a "programmable hyperlink that performs one of multiple predetermined functions when selected by the user, depending on the current mode." (D.I. 65 at 10) The parties agree that the two terms should be given the same meaning; their only disagreement is over the Report's requirement that the selection be done "by the user, depending on the current mode." (Report at 19) CoolTV argues that the construction improperly requires *the user* to select the hyperlink, wrongly excluding a scenario in which the user cannot change the mode. (*See, e.g.*, Tr. at 38-41) (providing example of viewer or network user who cannot change mode) The Report's rejection of CoolTV's view rested on three grounds. (*See* Report at 19-20) First, the natural reading of the claim as a whole suggests that the user is the selecting entity. (*Id.*) Second, the specification contains multiple references to the user as the selecting

6

entity. (*Id.*) Third, this understanding is supported by the opinions of Defendants' expert, although the dispute can be resolved without relying on extrinsic evidence. (*Id.*) The Court agrees with the Report's assessment and is not persuaded by CoolTV's argument that it should adopt a construction that encompasses two distinct types of user – the "programmer or developer" and the "viewing user." (*See* D.I. 65 at 10)

9. Given the detailed reasoning provided in the Report, the Court finds it unnecessary to address CoolTV's Objections any further.

May 20, 2021
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE